UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| QUINTON P. BROWN, Plaintiff, v. ELDON VAIL, et al., Defendants. | NO. CV-08-5091-JPH ORDER ON MOTION TO DISMISS |

Plaintiff Quinton P. Brown is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 2000cc. Mr. Brown filed this action on February 9, 2009.

Before the Court are Defendants' May 1, 2009 motion to dismiss Defendants Eldon Vail, Greg Garringer, Jeff Uttecht, and Gary Friedman and their 12(b)(6) motion to dismiss the § 1983 claims regarding the First Amendment, Eighth Amendment, and Fourteenth Amendment.(Ct. Rec. 47-49.) Mr. Brown filed a reply memorandum on June 1, 2009. (Ct. Rec. 54.) Defendants filed a reply memorandum on June 5, 2009. (Ct. Rec. 55.) On June 18, 2009, the parties consented to the jurisdiction of the Magistrate Judge in this case. (Ct. Rec. 58.)

**BACKGROUND**

Plaintiff Quinton P. Brown, an inmate at the Washington State Penitentiary (WSP), complains of difficulty receiving food appropriate to his Jewish beliefs and a lack of responsiveness to his complaints regarding the food provided to him. Mr. Brown is a member of the Jewish faith. (Ct. Rec. 10 ¶. 1.) Because of his faith, he observes various dietary rules. (Id.) This includes eating only "kosher" foods[1]. (Ct. Rec. 10 ¶ 2.) In addition to eating kosher on a daily basis, Mr. Brown restricts his diet to observe certain holidays throughout the year. Periodically Mr. Brown fasts.[2] During Passover, he eats a specific diet.[3]

[1] For food to be kosher, it must be prepared in a certain way. If the utensils used to prepare non-kosher foods come into contact with kosher foods, it renders the kosher food non-kosher. (See Ct. Rec. 10 ¶ 20-21.) Additionally, during the observance of Passover, foods must be "kosher-for-Passover," which it appears to be a more stringent form of kosher. (See Ct. Rec. 10 ¶ 39, 44.) Meat and dairy are not to be consumed together. (See Ct. Rec. 10 ¶ 67, 88-91.) Food cannot be cooked on the Sabbath, so a cold meal is consumed. (See Ct. Rec. 10 ¶ 92.)

[2] Mr. Brown observed the Fast of Tammuz on July 20, 2008. (Ct. Rec. 10, ¶ 69.) He planned to participate in the Fast of Tish B'Av from August 9, 2008 to August 10, 2008. (Ct. Rec. 10 ¶ 136). Mr. Brown also participated in a twenty-four hour fast for Yom Kippur on October 9, 2009. (Ct. Rec. 10 ¶ 95.) Because prisoners who are fasting cannot eat at normal meal times, they are provided with a "fast break meal," which is a sack meal that can be eaten after normal meal times. (Ct. Rec. 10 ¶ 69, 98.)

[3] Mr. Brown believes that he must consume matzah (unleavened bread) during the seven days of Passover. (Ct. Rec. 10 ¶ 107, 113.) He also believes that it was necessary to participate in Seder, a special dinner that takes place on the first two nights of Passover. (Ct. Rec. 10, ¶ 115-124.) Additionally, inmates who observe Passover are given "kosher-for-Passover" meals. (Ct. Rec. 10, ¶ 39.)

In his complaint, Mr. Brown sets forth facts showing a pattern of difficulty receiving food appropriate to his religious beliefs and alleging the involvement of various officials. Mr. Brown provides an extensive record of incidents in which his meals were not kosher and DOC employees did not remedy the problem. (Ct. Rec. 10, ¶ 9, 11, 12, 14, 16-18, 20, 21, 24-28, 30, 31, 33, 35, 38, 40, 41, 43, 46, 48-51, 58-60, 65, 70-73, 77-80, 82, 83, 86-106.) Mr. Brown also alleges facts showing that he does not receive his fast break meals or that these meals are inadequate. (Cr. Rec. 10 ¶ 69, 95, 134, 137.) Similarly, he puts forth facts showing that the Passover meals provided are either inadequate or are not delivered on time. (Ct. Rec. 10 ¶ 32-44, 107-131.) Mr. Brown also provides a detailed record of kites and grievances he has filed in regards to his difficulty in receiving appropriate food. (Ct. Rec. 10 ¶ 12, 13, 15, 19, 23, 64, 73, 93, 106, 110-112, 117-124, 126-128, 135-137.)

Mr. Brown also makes allegations that defendants not directly involved with food service are implicated in this set of facts. He concludes that Mr. Young, Grievance Coordinator at WSP has denied Mr. Brown his “First Amendment right to file grievances” by censoring his grievances.(Ct. Rec. 10 ¶ 139-141.) He also attempts to implicate Mr. Vail, Mr. Uttecht, and Mr. Garringer in his § 1983 claim by alleging that they failed to adequately train and supervise their employees. (Ct. Rec. 10 ¶ 8, 143.) Mr. Brown lists Gary Friedman, chairman of Jewish Prison Services International, as a defendant and puts forth

facts demonstrating that Mr. Brown's request to receive Seder dinner was denied in reliance upon an e-mail from Mr. Friedman. (Ct. Rec. 10 ¶ 116.)

Mr. Brown's exact legal claims are difficult to decipher. However, after a liberal reading of the Complaint and Mr. Brown's reply memorandum, it would appear that he asserts the following claims:

1. Denial of his First Amendment right to petition the government for redress of grievances
2. Violation of the Eighth Amendment prohibition of cruel and unusual punishment[4]
3. Denial of the Fourteenth Amendment right to equal protection under the law
4. Conspiracy to violate his civil rights
5. Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)

The defendants have moved to dismiss Defendants Vail, Garringer, Uttecht, Young, and Friedman, and the First Amendment, Eighth Amendment, and Fourteenth Amendment claims pursuant to Fed. R. Civ. P. 12(b)(6). In Mr. Brown's reply brief, he moves for dismissal of the Eighth Amendment claim without prejudice.

---

[4] In Mr. Brown's reply memorandum, he moves to dismiss the Eighth Amendment claim without prejudice. (Ct. Rec. 55, P. 49.) The court will not address the Defendants' motion to dismiss the claim because the issue is now moot.

**LEGAL STANDARD**

When considering a motion to dismiss, the Court must liberally construe the complaint in the plaintiff's favor and must take all the pleaded facts as true. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In applying this standard, the court must read the facts alleged in the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Although the pleadings need only give the defendant notice of the claims against him, the pleading standard is even more relaxed for pro se plaintiffs. The Supreme Court has instructed that the district court must liberally construe the complaint's allegations when the plaintiff is pro se. See Haines v. Kerner, 404 U.S. 519, 520 (1972). This is particularly true in civil rights cases. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992.

However, the Court cannot accept a claim as valid if the facts alleged do not support the claim. Accordingly, the Court cannot "supply essential elements of claims that were not initially pled."

Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir.1982). Nor can the court infer that a fact exists based on conclusory allegations pled. Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir 1984). In litigation instigated by prisoners, the Court shall move sua sponte to dismiss a complaint that fails to state a claim. 28 U.S.C. § 1915(a)(2)(B)(ii). Prior to dismissal, a pro se plaintiff must be given leave to correct the complaint's deficiencies. McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992). However, the Court need not give such relief if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Franklin v. Murphy, 745 F.2d 1221, 1228 n.8 (9th Cir. 1984(citing Stanger v. City of Santa Cruz, 653 F.2d 1257, 1257-58 (9th Cir. 1980)). See also Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (citing Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**DISCUSSION**

I. SECTION 1983 FIRST AMENDMENT CLAIM AS TO PRISON GRIEVANCE SYSTEM

Mr. Brown appears to claim that the defendants deprived him of his First Amendment right to petition the government for redress. In his complaint, Mr. Brown states that, despite submitting various kites and formal grievances, "little to no action has been undertaken by: [sic] Eldon Vail, Greg Garringer and Jeffrey A. Uttecht to correct their subordinates' continued deprivation of Browns' exercise of religion." (Ct. Rec. 10 ¶ 8.) Defendants argue that Mr. Brown has

failed to state a claim because inmates do not have a constitutional right to a prison grievance system (Ct. Rec. 48 P. 12.) In Mr. Brown’s reply memorandum, he asserts that prisoners do have a First Amendment right to file prison grievances.

The First Amendment of the United States Constitution provides that Congress shall not abridge the people’s right to petition the government for the redress of grievances. U.S. Const., Amend. I. A person retains their First Amendment rights despite being incarcerated. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Because a prisoner’s ability to access the courts depends on his access to a prison grievance system, a prisoner may seek relief under § 1983 if prison authorities act to chill the filing of grievances. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). However, “[t]here is no legitimate claim of entitlement to a [prison] grievance procedure.” Mann v. Adams, 855 F.2d 639 (9th Cir. 1988). Because there is no legitimate claim of entitlement to a grievance procedure, there is no “protectable right” to a grievance procedure. Id, (citing Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979)). Accordingly, although a prisoner may seek relief if prison authorities act to chill the prisoner’s filing of grievances, there is no relief for the lack of a grievance system or failure to follow grievance system procedures.

Mr. Brown has not stated a claim for which relief can be granted regarding a “First Amendment right to file grievances.” Mr. Brown is

correct in stating that Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), refers to a "First Amendment right to file grievances." Id. at 1288. However, the complete sentence reads: "Bruce alleges that prison officials violated his First Amendment right to file grievances." Id. Because this is a statement of Mr. Bruce's claim and not a holding of the Court, Mr. Brown's reliance on this case is misplaced. Moreover, Mr. Bruce alleges he suffered retaliation for filing grievances, which is actionable under § 1983. For these reasons, this Court declines to adopt Mr. Brown's reasoning.

This Court also holds that Mr. Brown can prove no set of facts supporting a § 1983 claim relating to grievances. To state a § 1983 claim relating to the prison grievance system, the facts pled must show retaliation for filing grievances. Mr. Brown pleads no facts demonstrating that prison authorities retaliated against him in response to his filing of grievances. Moreover, although Mr. Brown was injured on some level, he has suffered no injury for which there is a legal remedy.[5] Because there is no legal right to a prison grievance system and because Mr. Brown was not retaliated against for using the grievance system, Mr. Brown's claim relating to the grievance system is dismissed without leave to amend.

---

[5] Retaliation may result in a First Amendment claim in which the injury asserted is the chilling effect on the filing of grievances. Hines v. Gomez, 108 F. 3d 265, 269 (9th Cir. 1997). Mr. Brown filed twelve grievances in a fourteen month period, as well as numerous kites. (See Ct. Rec. 10 ¶ 12, 13, 23, 34, 50, 52, 54, 66, 69, 93, 110, 118, 124.) The pattern of filing indicates no chilling effect.

Additionally, Defendant Young shall be dismissed. The only facts and allegations pled relating to Mr. Young were facts pled in support of the First Amendment claim and the Eight Amendment claim.[6] (See Ct. Rec. 10. ¶ 120-124, 139-141) Because both of these claims are dismissed, Mr. Young is dismissed without prejudice.

II. SECTION 1983 FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

In the complaint, Mr. Brown "seeks judicial relief under [the Fourteenth Amendment].(Ct. Rec. 10 145.) In his reply memorandum, he clarifies that he alleges a violation of his right to equal protection. (Ct. Rec. 55 ¶ 26.) The Defendants move to dismiss this claim because prisoners are not a protected class and because Mr. Brown failed to allege intent to discriminate. (Ct. Rec. 47 P. 11.)

Because it can be inferred that Mr. Brown belongs to a protected class, the Court will not grant the Defendants' motion to dismiss on the basis that prisoners are not a protected class. "'The first step in equal protection analysis is to identify the [defendants'] classification of groups.'" Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995) (citing Country Classic Dairies, Inc. V. State of Montana, Dep't of Commerce Milk Control Bureau, 847 F.2d 593, 596 (9th Cir. 1988)). The defendants argue that Mr. Brown's equal protection claim should be dismissed because prisoners are not a

[6] These statements may also have related to the alleged Eighth Amendment violation because Mr. Brown states that Mr. Young caused "irreparable harm; [sic] hunger, pain, and weight loss." (Ct. Rec. 10, ¶ 140.)

suspect class. (Ct. Rec. 47 P. 12.) Although the Ninth Circuit has not specifically addressed whether prisoners are a suspect class[7], there is no need to decide this issue because Mr. Brown's complaint is sufficient to support an inference Mr. Brown is a member of a protected class by virtue of his religion.

Although an amendment would be appropriate to clarify to which protected class Mr. Brown belongs, it is not necessary[8] because Mr. Brown failed to allege discriminatory intent. "To state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with intent to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). To show that the defendant acted with intent to discriminate against the plaintiff, the plaintiff must allege that the defendants' acts were motivated by discriminatory animus. Id. Alleging facts that prove that the defendants acted knowingly or that the defendants acted with deliberate indifference is not sufficient to

---

[7] The defendants cite to three other circuits' which have found that prisoners are not a suspect class. (Ct. Rec. 47 P. 12.)

[8] Mr. Brown pleads that he "holds a sincere belief in and is an adherent to the religious tenets of Judaism." (Ct. Rec. 10 ¶ 1). In his reply memorandum, Mr. Brown also alleges that Mr. Friedman, Chairman of Jewish Prison Services International, discriminated against him due to "racial heritage" (Ct. Rec. 53 ¶ 13.) Because Mr. Friedman leads a Jewish service organization, this discrimination appears to be based on Mr. Brown's membership in a race other than what some might consider the "Jewish Race."

support an equal protection claim. See Id. at 684. Similarly, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F. 3d 825, 827 (10th Cir. 1979)). Neither is a "showing that different persons are treated differently" sufficient, "without more, to show a denial of equal protection." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 230. However, if words are coupled with disparate impact, this can allow for an inference of discriminatory animus. See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir. 1991).

This Court holds that Mr. Brown failed to state an equal protection claim because he did not allege discriminatory intent and no additional facts could be pled to support a claim of discriminatory intent. Mr. Brown alleges DOC officials acted with "actual malice, willful/wanton [sic] indifference too [sic] and deliberate disregard for Brown's known - [sic] statutory and constitutional rights." (Ct. Rec. 10 ¶ 142). The facts he produces tend to support the claim that certain DOC employees acted knowingly or with deliberate indifference. However, these mental states do not rise to the same level as discriminatory intent. Because neither the facts nor the allegations pled can support a claim of an equal protection violation, Mr. Brown's Fourteenth Amendment claim is dismissed without leave to amend.

III. WHETHER FRIEDMAN ACTED UNDER "COLOR OF LAW"

Mr. Brown includes Mr. Friedman as a defendant. The defendants

argue that Mr. Friedman should be dismissed because he did not act under color of law. Mr. Friedman is the chairman of Jewish Prisoner Services International. He is not a prison chaplain. (Ct. Rec. 53 ¶ 12.) Chaplain Alden denied Mr. Brown's request to receive Seder dinners in reliance on an e-mail sent from Mr. Friedman. (Ct. Rec. 10 ¶ 116.) As stated above, § 1983 applies to those acting under color of law. RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined in an institution . . . unless the government demonstrates that imposition of a burden on that person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000-5(4)(A)(iii). Included in RLUIPA's definition of "government" is "any other person acting under color of State law." 42 U.S.C. § 2000-5(4)(A)(iii).

For a person to act under color of law, 'the alleged infringement must be fairly attributable to the government.' Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835 (9th Cir. 1999) (citing Lugar v. Edmonson Oil Co., 457 U.S. 952 (1981). For an infringement to be fairly attributable to the government, two requirements must be met. Id. The first requirement is that the deprivation "must be caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government]." Id. The defendants do not dispute that the first requirement is met.

The second requirement is that "the party charged with the

deprivation must be a person who may fairly be said to be a [governmental] actor." Id. A private person is presumed not to be acting under the color of law. Id. Although various tests can be used to determine whether a person is a state actor, there is no "specific formula." Id. The defendants acknowledge that there is no Ninth Circuit case law on whether a chaplain is acting under color of law when he provides his services in a state prison. However, the defendants do point to Eighth Circuit authority that holds a prison chaplain does not act under color of law (Ct. Rec. 48 P. 16.) See Montano v. Hedgepeth, 120 F. 3d 844 (8th Cir. 1977). Although this authority is not binding, this Court finds the Eighth Circuit's reasoning persuasive. In Montano, the Court relies heavily on Polk County v. Dodson, 454 U.S. 312 (1981), in which the Supreme Court held that a county public defender was not acting under color of law because "the job is marked by 'functions and obligations in no way dependent on state authority.'" 120 F.3d at 849 (citing Polk, 454 U.S. at 318). By using this "functional approach," the Court in Montano determined that a prison chaplain "even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastical functions." 120 F.3d at 850.

This Court holds that Mr. Friedman is not a state actor. Mr. Brown pleads that Chaplain Alden denied Mr. Brown's request to participate in Seder dinner in reliance on an e-mail authored by Mr. Friedman. (Ct. Rec. 10 ¶ 116.) Although it is only alluded to in the complaint, Mr. Brown clarifies in his reply memorandum that Mr.

Friedman determined that Mr. Brown was "'not Jewish' according to Orthodox interpretation of . . . Jewish law." (Ct. Rec. 53 ¶ 13.) Interpreting Jewish law is an ecclesiastical function, and thus, not a function of the State. Because Mr. Friedman was performing an ecclesiastical function, he was not a state actor in performing this function. Moreover, Mr. Friedman is "not a 'prison chaplain.'" (Ct. Rec. 53 ¶ 12.) Because he is not a state employee, his connection to the state for purposes of acting under color of law is even more tenuous than the chaplain in Montano. For these reasons, the Court dismisses Mr. Friedman without leave to amend.

IV. SECTION 1985(3) CLAIMS

Mr. Brown seeks relief under 42 U.S.C. 1985(3). The pertinent part of the statute reads:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. 1985(3).

The elements of a 42 U.S.C. 1985(3) action are: (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States citizen." Mustafa v. Clark County School Dist, 157 F.3d 1169, 1181 (9th Cir. 1998).

Although the defendants do not seek to dismiss on this claim, the

Court holds that no set of facts can support a claim of conspiracy to violate Mr. Brown's constitutional rights. Mr. Brown alleges that Sgt. Serven stated "it's a conspiracy to deny you, [sic] your meal." (Ct. Rec. 10 ¶ 81.) Because this fact must be taken as true, the first element is satisfied. The pattern of Mr. Brown not receiving kosher food supports the element of acting in furtherance of the conspiracy. Additionally, he alleges that he was harmed. (Ct. Rec. 10 ¶ 7, 8, 140.) However, Mr. Brown must allege some facts that support the element of conspiracy and that the plaintiffs had discriminatory animus. As stated above, the Court holds that no set of facts can be brought to support the discriminatory animus element of the ¶ 1983 equal protection claim. The Court found above that there was no discriminatory animus. The same reasoning applies as to why Mr. Brown would be unable to offer any facts proving discriminatory animus of a conspiracy. Accordingly, the § 1985 claim is dismissed without leave to amend.

V. MOTION TO DISMISS DEFENDANTS VAIL, UTTECHT, AND GARRINGER

The defendants also move to dismiss Mr. Vail, Mr. Uttecht, and Mr. Garringer based on the Eleventh Amendment and the prohibition against § 1983 liability based on respondeat superior. Because the § 1983 claims have been dismissed, the respondeat superior argument is moot. However, Mr. Brown's RLUIPA claim remains. As stated above, RLUIPA prohibits actions of the "government" which place a substantial burden on an inmate's exercise of religion. 42 U.S.C. § 2000cc-1(a). In addition to those "acting under color of law," RLUIPA applies to

"(i) a State, county, municipality, or other governmental entity created under the authority of a State," and "(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i). . ." 42 U.S.C. § 2000cc-5(4)(A). Because these defendants may be held liable under RLUIPA, they are not dismissed.

The Eleventh Amendment states, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend XI. In addition, a state cannot be sued by a citizen of that state in federal court. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). The fact that the state is not a named party in an action does not necessarily mean that the state is not a party. Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988). If damages must be paid from the state treasury, then the state is the real party in interest. Because a lawsuit is brought "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," "it is no different from a suit against the State itself." Will, 491 U.S. 58 at 71.

Although a plaintiff cannot seek damages from the state, he may get injunctive relief from state officials. A suit against state officials is not a suit against the state when injunctive relief is sought. Ex Parte Young, 209 U.S. 123, 152 (1908). Accordingly, the Eleventh Amendment does not bar a prisoner from seeking injunctive

relief in a RLUIPA claim against prison officials. Mayweathers v. Newland, 314 F.3d 1062, 1068 (9th Cir. 2002).

Plaintiff brings suit against all defendants, including Mr. Vail, in their official capacity and as individuals. One can look to RCW 72.02 and WAC 137-04-020 to see that DOC is an arm of the State of Washington. Because all of the remaining defendants are DOC employees, any judgment against them in their official capacities would be paid by the State of Washington. Because the State of Washington is the real party in interest, Mr. Brown cannot seek damages from any of the DOC-employed defendants in their official capacity. Accordingly, the defendants' motion as to Mr. Vail is granted as to all defendants employed by DOC only so far as Mr. Brown is seeking damages. Mr. Brown may still seek prospective injunctive relief against Mr. Vail, Mr. Garringer, Mr. Uttecht, and the other defendants employed by DOC.

Mr. Brown also brings suit against all defendants in their individual capacity. It appears that only one other court in the Ninth Circuit has addressed the issue of whether state officials are entitled to qualified immunity from RLUIPA liability. See Shilling v. Crawford, 536 F.Supp.2d 1227, 1234 (D.Nev. 2008). That Court relied on the Eleventh Circuit's holding that state officials being sued as individuals have qualified immunity from RLUIPA. See Smith v. Allen, 502 F.3d 1255, 1275 (11th Cir. 2007). This Court too finds the Eleventh Circuit's reasoning persuasive and holds that these state officials have qualified immunity from RLUIPA in this suit.

Individuals who are employed by the State have not agreed to

abide by RLUIPA in exchange for Federal financial assistance. Congress can achieve objectives not necessarily within its enumerated powers "through the use of the spending power and the conditional grant of federal funds." South Dakota v. Dole, 483 U.S. 203, 207 (1987). RLUIPA apples to "a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). Although RLUIPA may exceed Congress' power under the Spending clause, "Congress' condition stands," and "States subject themselves to that condition by voluntarily accepting federal funds." Cutter v. Wilkinson, 544 U.S. 709, 732-733 (2005). The State of Washington may willingly accept federal funds in exchange for abiding by RLUIPA. However, its individual employees do not. This Court will not hold them accountable for agreements into which the State of Washington may enter. Because of this, the defendants in their individual capacity are entitled to qualified immunity.

**CONCLUSION**

For the reasons discussed above, it is **ORDERED** that the defendants' motions to dismiss Mr. Brown's 42 U.S.C. § 1983 claims as to First Amendment, Eighth Amendment, and Fourteenth Amendment (Ct. Rec. 47) are **GRANTED** and the defendants' motion to dismiss Defendant Friedman (Id.) is **GRANTED**. The defendants' motion to dismiss Defendants Vail, Garringer, and Uttecht (Id.) is **GRANTED** as to Mr. Vail, Mr. Garringer, and Mr. Uttecht as individuals, but **DENIED** as to as to these defendants in their official capacity. It is further

**ORDERED** that Mr. Brown's 42 U.S.C. § 1985(3) claim is **DISMISSED** and that the remaining individual defendants are **DISMISSED.** Because Mr. Brown was unable to support his claims with the extensive facts pled, it is clear to this Court that no amendments would cure the deficiencies in his complaint. Therefore, the above claims are dismissed without leave to amend.

Mr. Brown may proceed on the RLUIPA claim seeking injunctive relief from the remaining defendants in their official capacity.

The District Court Executive is directed to enter this Order and forward copies to counsel and to Petitioner.

**IT IS SO ORDERED** THIS **28** DAY OF JULY, **2009.**

s/ James P. Hutton
JAMES P. HUTTON
U.S. Magistrate Judge