```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
QUINTON P. BROWN,           )
                            )   NO.  CV-08-5091-JPH
                            )
            Plaintiff,      )
                            )
     v.                     )   ORDER DENYING MOTION FOR
                            )   PRELIMINARY INJUNCTION
                            )
                            )
ELDON VAIL, et al.,         )
                            )
                            )
            Defendant.      )
                            )
```

## I. INTRODUCTION

On December 1, 2009, plaintiff filed a motion seeking a preliminary injunction and temporary restraining order pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA) with respect to the Jewish holiday which will be observed on March 30 and 31,2010 (Ct. Rec. 97, 98). Plaintiff is a prisoner at the Washington State Department of Corrections (DOC) facility in Walla Walla. Defendants responded and plaintiff replied (Ct. Recs. 103, 105). Additional briefing was requested by the Court and supplied (Ct. Recs. 109,110, 113,121). The parties consented to the Magistrate Judge's jurisdiction (Ct. Rec. 58). The Court has previously dismissed all of Plaintiff's claims except those brought under RLUIPA (Ct. Rec. 61). The motion is now set for hearing without argument on February 17, 2010.

In a nutshell, Plaintiff asks the Court to order the Defendants to provide him with a Seder box for Passover 2010 so that he may practice his professed religion of Judaism. The

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 1

Defendants respond that Plaintiff has access to Seder boxes like every other offender who has properly declared to the Department of Corrections (DOC) a belief in Judaism. The conflict here arises because the Department changed its policy from previously (before Passover 2008) purchasing Seder boxes for offenders who requested them to now giving offenders the information necessary to purchase the Seder boxes themselves or having them donated by religious organizations. Additionally, the Plaintiff contends that he is wrongly prevented, in violation of RLUIPA, from participation in group worship because DOC policy does not allow segregated offenders to worship together.

## II. STANDARD OF REVIEW

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA), Plaintiff is not entitled to any prospective relief unless this Court enters the necessary findings required by the Act. The PLRA states: Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief. 18 U.S.C. § 3626(a)(1)(A).

A "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). "[T]he term "relief" means all relief in any form that may be granted or approved by the court . . . ." 42 U.S.C. § 3626(g)(9).

In a civil rights case, injunctions must be granted sparingly and only in a clear and plain case. The United States Supreme Court has stated: Even in an action against private individuals, it has long been held that an injunction is "to be used sparingly, and only in a clear and plain case." When a plaintiff seeks to enjoin the activity of a government agency, even within the unitary court system, his case must contend with "the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Rizzo v. Goode, 423 U.S. 362, 378 (1976) (citations omitted).

This holding applies even more strongly in cases involving the administration of state prisons. Turner v. Safley, 482 U.S. 78, 85 (1987). "Running a prison is an inordinately difficult undertaking . . . peculiarly within the province of the legislative and executive branches of government . . . [S]eparation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in Martinez, additional reason to accord deference to the appropriate prison authorities." Id. at 85 (citing Procunier v. Martinez, 416 U.S. 396, 405(1974)).

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 3

In order to justify the "extraordinary and drastic remedy" of injunctive relief under Federal Rule of Civil Procedure 65, the moving party bears a heavy burden. Canal Authority of the State of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974). The moving party must demonstrate that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., ____ U.S. ____, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249(2008). It is no longer sufficient for the Plaintiff to assert a possibility of success on the merits. Id. at 175. The lesser standards, cited by Plaintiff in his motion, are "no longer controlling, or even viable." Am. Trucking Ass"ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

### III. FACTS

Plaintiff completed a religious preference form documenting his professed religious beliefs. As a result, he is given access to all religious services provided by the DOC for Judaism. Defendants acknowledge that the policy of providing Seder boxes to prisoners was changed in early 2008. Declaration of Greg Garringer Ex. 1 to Ct. Rec. 103. The previous policy facilitated the participation of Jewish offenders in Passover by purchasing one Seder box for offenders who requested one and who were not donated a Seder box by an outside religious services provider. Ct. Rec. 113, Ex. 3.

There is a dispute about whether that change of policy was communicated to the Plaintiff in a timely way before Passover 2008, but that dispute is not material to the instant motion. Ct. Rec.109.

Immediately prior to Passover 2008, there were 418 offenders within the DOC who had completed a religious preference form indicating they were Jewish. Each of these offenders was permitted to sign up to participate in Passover and request a Seder box. Of the 418 professed Jewish offenders in 2008, less than 50 were considered Jewish under Jewish law, i.e. they were born of a Jewish mother or had completed proper conversion to the faith in accord with Jewish law. The outside religious service providers were only willing to donate Seder boxes to those considered Jewish under Jewish law. Ct. Rec. 113, Ex. 3. Plaintiff acknowledges he is not considered Jewish under Jewish law, but alleges he is devout and follows his religion as best he can under the constraints of incarceration. Ct. Rec. 121.

Given the anticipated shortage of Seder boxes in 2008, DOC made efforts to find other sources for the boxes. None other than those already known were located and they indicated there would be a cost of between $10 and $25 each to purchase the boxes, even if enough boxes could be made available. DOC then considered the option of not purchasing Seder boxes for any offenders, but giving offenders access to purchase their own Seder boxes. As a result of the inability to purchase enough Seder boxes, the expense to the State, and the fact that State dollars are not to be spent on religious items, the decision was made to stop purchasing the boxes for any offender. Ct. Rec. 113, Ex. 3.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 5

Relevant to Passover 2010, all offenders have been notified that they may contact the outside religious service providers for donation of or purchase of Seder boxes. A notice to this effect was posted in all offender housing units prior to January 8, 2010. Ct. Rec. 113, Ex. 3, Attachment D. As with previous years, a Jewish offender may also elect to have Seder items sent in by family through an approved vendor or participate in a group ceremony where only one Seder box would be needed.

Plaintiff raises two main objections. First, he alleges, without contradiction by Defendants, that he is indigent and cannot afford to pay for a Seder box. Ct. Rec. 110. He further alleges that he has no living relatives. Ct. Rec. 121. Secondly, he contends that he is unable to participate in any group Passover ceremony because he is in Intensive Management Status and is housed in the Intensive Management Unit (IMU).

Defendants agree that Plaintiff is housed in IMU. He was placed on Administrative Segregation in August 2009 due to an incident in the Special Housing Unit. Ct. Rec. 113, Ex. 2, Dec. of Kimberly Reifsnider, Attachment A. Staff members of DOC note Plaintiff's failure to follow directives of his mental health treatment plans and his history of aggressive language and physical posturing, refusing urinalysis, tampering with locks, refusing staff orders and refusing housing, possession of controlled substances and self harm. Id. Plaintiff was assigned Intensive Management (maximum security) status, Level 5, on November 11, 2009 where he currently remains.

IMU policy 320.255 states that segregated inmates' access to programs (including religious ceremonies) may be limited due to risk level. These inmates may be physically segregated from all other inmates. Level 5 housing offers the highest level of security within DOC. *Id.*

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

In order to establish a claim under RLUIPA, Plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citing Cutter v. Wilkinson, 544 U.S. 709, 722, 125 S. Ct. 2113, 2119 (2005). "[A] burden is substantial under RLUIPA when the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. Jan. 23, 2008) (internal quotes omitted). A prison"s "accommodation of religious observances" should not be elevated "over an institution"s need to maintain order and safety." Cutter, 125 S. Ct. at 2122. On the contrary, "an accommodation must be measured so that it does not override other significant interests." Id. Furthermore, "prison security is a compelling state interest, and … deference is due to institutional officials" expertise in this area." Id. at 2124 n.13.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 7

1  Plaintiff"s lawsuit addresses the provision of the kosher
2 diet and his access to Passover meals at the Penitentiary. See
3 Complaint. Plaintiff has not demonstrated a likelihood of success
4 on the merits with regard to his access to Passover services and
5 meals at the Penitentiary. Although Plaintiff alleges that other
6 religious groups have been given religious artifacts for use in
7 their religious ceremonies, a close reading of Plaintiff's
8 submission indicates that may have been the case before DOC sought
9 to change its policy before Passover 2080. Ct. Rec. 121. The DOC
10 may not demonstrate partiality to one group by providing Jewish
11 offenders with Seder boxes in preference to other religious
12 groups.
13  The DOC places no limit on Plaintiff's ability to access
14 Jewish services at the Penitentiary, other than those limitations
15 associated with his incarceration in the Intensive Management
16 Unit. The Department is under no obligation to provide him with
17 the Seder box and contents for Passover services. In fact, if the
18 DOC were to provide such items, they would be violating both the
19 First Amendment"s Establishment Clause and Article I, Section 11
20 of the Washington Constitution.
21  Pursuant to the Establishment Clause, "Congress shall make no
22 law respecting an establishment of religion." "The Establishment
23 Clause ensures government neutrality in matters of religion."
24 Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1245 (9th
25 Cir.1981) (citing Gillette v. United States, 401 U.S. 437, 91 S.
26 Ct. 828, 28 L. Ed. 2d 168 (1971)). "While the government must
27 avoid „partiality to any one group," ... it may deviate from
28 absolute rigidity to accommodate the religious practices of each

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 8

1  group." Id. (citing Zorach v. Clauson, 343 U.S. 306, 313, 72 S.
2  Ct. 679, 96 L. Ed. 954 (1952); Walz v. Tax Comm"n, 397 U.S. 664,
3  669, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970)). The State,
4  therefore, must accommodate religious practice, however, the State
5  cannot demonstrate partiality to one group by providing Jewish
6  offenders with Seder boxes and other groups with nothing.
7      Additionally, the Washington Constitution precludes the State
8  from appropriating any public money or property to any particular
9  religious worship, exercise, or instruction or support of any
10 religious establishment, except for the employment of chaplains.
11 Washington Const. Article I, § 11. Thus, to provide the Seder
12 boxes as requested would be a violation of the United States and
13 Washington constitutions.
14     Moreover, Plaintiff has made no showing that he attempted to
15 have any outside religious organization donate a Seder box to his
16 use and was refused. The Plaintiff appears now (Ct. Rec. 121) to
17 allege that since he has not formally or properly converted to
18 Judaism, there is no chance that the outside religious
19 organizations will provide him with a Seder box. But there is
20 nothing in the record to show he tried to obtain a Seder box from
21 those organizations for Passover 2010. And while he may have a
22 legitimate argument that he was not given enough notice to make
23 that attempt before Passover 2008, he does not and cannot make
24 that claim with respect to Passover 2010.
25     In light of these facts, Plaintiff cannot demonstrate a
26 likelihood of success on the merits. Plaintiff is permitted to
27 participate in all Jewish religious activities, without any sort
28 of "religiously required test and/or any clergy verification

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 9

test." Similarly, Plaintiff's religious exercise has not been restricted in any way by the Defendants, other than the limitations associated with his incarceration in the Intensive Management Unit. Plaintiff may purchase or have donated to him his own Seder box and have it sent to him at the Penitentiary. The relief Plaintiff seeks – to require the DOC to buy sacred religious items and give them to Plaintiff – would violate the law.

### B. Irreparable Injury

Plaintiff alleges that if the DOC does not provide him with a Seder box or allow him group worship he will suffer irreparable injury. However, the record demonstrates that Plaintiff, like every other Jewish offender, has the ability to order his own Seder box. Plaintiff cannot demonstrate he will suffer irreparable injury if the requested relief is not granted.

### C. Balance of Equities

Plaintiff has not alleged any harm that would outweigh the appropriate level of deference to the DOC and the Defendants. Plaintiff has not demonstrated an entitlement to the relief requested, nor has he demonstrated that the actions taken by the DOC harm him. Again, there is nothing in the record that indicates the Plaintiff made any effort to obtain a Seder box from one of the identified religious organizations, from family, or any other source except DOC in anticipation of Passover 2010. Balanced against this is a reasonable effort made by the Defendants and DOC to inform the Plaintiff of those options and to make religious services, special foods and Seder boxes available to him.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 10

**D.   Public Interest**

Plaintiff offers no argument in support of his motion for preliminary injunctive relief as to how the public interest favors granting the requested relief under RLUIPA. The public interest in not ordering the State to violate the U.S. and Washington Constitutions is great. In addition to the public's interest in the spending of tax dollars to accommodate the type of relief requested by Plaintiff, the public has an important interest in the government's neutrality with regard to religion.

**V. CONCLUSION**

The DOC's previous policy of extending a courtesy to Jewish offenders, by purchasing Seder boxes for them, does not create a right under RLUIPA. Cutter v. Wilkinson, supra, citing Charles v. Verhagen, 348 F.3d 601, 605 (C.A. 7 2003). Similarly, the DOC's change in policy in 2008 to no longer provide Seder boxes does not create a violation of a right under RLUIPA.

Plaintiff's religious exercise is also not substantially burdened by his incarceration in the IMU because he is still able to participate in a Seder ceremony as an individual. Even if his religious practice was burdened by his incarceration, it was his own behavior that created that burden. The DOC has a compelling governmental interest in maintaining the safety and security of staff and offenders. Coupled with Plaintiff's inability to demonstrate any effort by him to seek assistance from outside religious entities for a Seder box for Passover 2010, Plaintiff's motion must fail.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 11

The Court therefore **ORDERS** AS FOLLOWS:

1. Plaintiff's Motion For Preliminary Injunction (Ct. Rec. 97) is **DENIED**;

2. The Clerk of Court shall file this Order electronically and provide a copy to the Plaintiff.

DATED this 19th day of February, 2010.

                                         s/ James P. Hutton
                                          JAMES P. HUTTON
                            UNITED STATES MAGISTRATE JUDGE